IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 08-00718 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID KATO (01); and GLEN KELLEY MCCAIG, aka KELLEY MCCAIG (02), | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS BASED ON VIOLATION OF DUE PROCESS AND COMPULSORY PROCESS

On October 16, 2009, the Court heard Defendants' Joint Motion to Dismiss and held an evidentiary hearing. Tracy Hino, Assistant U.S. Attorney, and Heith Kaneshige, Assistant U.S. Attorney, appeared at the hearing on behalf of Plaintiff; Paul Wong, Esq., Joseph Abraham, Jr., Esq., Victor Bakke, Esq., and Jim Darnell, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the Court **DENIES** Defendants' Joint Motion to Dismiss Based on Violations of Due Process and Compulsory Process. (Doc. # 98.)

## BACKGROUND

This matter concerns alleged activities by David Kato and Glen Kelley McCaig, aka Kelley McCaig (collectively, "Defendants") to circumvent federal immigration laws by fraudulently filling out employees' employment verification forms to recruit and employ illegal aliens unauthorized to work in the United States.

The Immigration Reform and Control Act of 1986, and its regulations, requires that every employee and employer complete a Form I-9 Employment Eligibility Verification ("I-9 Form") to ensure that only eligible persons lawfully work in the United States. To establish that he or she is lawfully eligible to work in the United States, the employee must attest to being either: (1) a citizen or national of the United States; (2) a lawful permanent resident; or (3) an alien who has specific permission to work in the United States. (Doc. # 1 at 5.) An employer must attest that he or she has examined the documents, is satisfied that the employee is lawfully eligible to work in the United States, and certify under penalty of perjury that the documents presented by the employee appear genuine. (Id. at 8.)

A so-called "documenting scheme" is utilized by some individuals to circumvent the I-9 Form and its requirements. (Id at 10.) This scheme involves

purchase of a counterfeit permanent resident card and counterfeit social security card, called "papers." (Id. at 11.) An employer who wishes to participate in this scheme will inspect these "papers" and, if they are deemed of sufficient quality, will fraudulently attest that the documents appear genuine. (Id.)

        Defendants were indicted on December 3, 2008. An Immigration and Customs Enforcement ("ICE") audit of various companies[1] had determined that of 54 current employees, 47 used fraudulent permanent resident cards and were not eligible to lawfully work in the United States. (Id. at 15.) Of these 47 current employees using fraudulent permanent resident cards, Defendant Kato signed the I-9 Forms approximately 64% of the time as the employer or authorized representative, and Defendant McCaig signed the I-9 Forms approximately 36% of the time as the employer or authorized representative. (Id. at 16.) The audit also determined that 49 former employees had used fraudulent permanent resident cards. Kato and McCaig signed those I-9 Forms approximately 60% and 34% of the time, respectively. (Id. at 17-18.) A grand jury charged McCaig and Kato with various counts of making false statements or representations in connection with I-9 Form Employment Eligibility Verification and related offenses. (Id. at 20-41.)

---

[1] Akea Farms, Inc, Kelena Farms, Inc., Larry Jefts Farms LLC, Puuloa Farms, Inc., Molokai Agricultural Park, Inc., Sugarland Distribution, Inc., Waikele Farms, Inc., and The Farms, Inc. (Doc. # 1 at 14.)

On September 14, 2009, Defendants filed the instant motion to dismiss the indictment. (Doc. # 98.) In their motion, Defendants assert that their rights to due process and compulsory process were violated when the Government deported 21 of the alien witnesses before Defendants' counsel interviewed them.

On September 29, 2009, the Government filed an Opposition. (Doc. # 121.) Defendants did not file a Reply.

## STANDARD OF REVIEW

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, a party may file a motion to dismiss based on "any defense, objection, or request that the court can determine without a trial of the general issue." See United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986). "An indictment is sufficient if it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend' and (2) 'enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Lazarenko, 546 F.3d 593, 599 (9th Cir. 2008) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

In considering a motion to dismiss, a court is limited to the face of the indictment and must accept the facts alleged in that indictment as true. Winslow v. United States, 216 F.2d 912, 913 (9th Cir. 1954). "[A]n indictment 'should be read

4

in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.'" United States v. Berger, 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting United States v. King, 200 F.3d 1207, 1217 (9th Cir. 1999)).

"The government need not allege its theory of the case or supporting evidence, but only the 'essential facts necessary to apprise a defendant of the crime charged.'" United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982) (quoting United States v. Markee, 425 F.2d 1043, 1047-48 (9th Cir. 1970)).  In fact, an indictment that sets forth the charged offense in the words of the statute itself is generally sufficient.  United States v. Johnson, 804 F.2d 1078, 1084 (9th Cir. 1986).

## DISCUSSION

Defendants argue that their Fifth Amendment right to due process and Sixth Amendment right to compulsory process and right to effective assistance of counsel were violated when the Government deported 21 alien witnesses before Defendants' counsel interviewed them.  (Mot. at 2.)

A two-pronged test of bad faith and prejudice is applied to an allegation that the Government has deported a witness with potentially exculpatory

evidence. United States v. Dring, 930 F.2d 687, 693 (9th Cir. 1991); United States v. Valenzuela-Bernal, 458 U.S. 858, 873 (1982).

First the Defendant must make an initial showing that the Government acted in bad faith. Dring, 930 F.2d at 693. It is Defendants' burden to prove that the Government acted in bad faith. Id. (citing Arizona v. Youngblood, 488 U.S. 51, 55, 58 (1988)). Without a showing of bad faith, "failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). When considering whether the Government acted in bad faith, a court should consider whether the Government departed from normal deportation procedures. Dring, 930 F.2d at 695 (citing California v. Trombetta, 467 U.S. 479, 488 (1984)). If the Government deported the aliens to achieve an unfair advantage in securing a conviction, that is evidence of bad faith. See id. at 695.

Second, Defendants must make a showing that the Government's conduct resulted in prejudice to Defendants' case. Id. at 693. Indeed, the "'mere fact that the Government deports such witnesses is not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment." Valenzuela-Bernal, 458 U.S. at 872-73. Defendants must make "some showing that the evidence lost would be both

material and favorable to the defense" and that it is "not merely cumulative to the testimony of available witnesses." Id. at 873. When a defendant has no access to a witness who has been deported, that defendant should explain "the events to which a witness might testify, and the relevance of those events to the crime charged" to demonstrate the presence of materiality. Id. at 871. Evidence is considered material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." Dring, 930 F.2d at 695 (quoting Valenzuela-Bernal, 458 U.S. at 874.) In these cases, courts should "afford some leeway for the fact that the defendant necessarily proffers a description of the material evidence rather than the evidence itself." Valenzuela-Bernal, 458 U.S. at 874.

These considerations must be balanced with "the responsibility of the Executive Branch faithfully to execute the immigration policy adopted by Congress," which "justifies the prompt deportation of illegal-alien witnesses upon the Executive's good faith determination that they possess no evidence favorable to the defendant in a criminal prosecution." Id. at 872.

A.  Bad Faith

Defendants have not met their burden to demonstrate that the Government acted in bad faith.

It is undisputed that on June 20, 2008, ICE agents, executing criminal search warrants, seized counterfeit alien registration cards and counterfeit social security cards and arrested 43 illegal aliens for administrative immigration violations.  (Opp'n at 6.)  Ultimately, 34 of these individuals consented to interviews and 8 made statements that directly or indirectly implicated the Defendants.  (Id. at 8.)  This group of 8 is termed "the cooperators," and all subsequently pled guilty pursuant to plea agreements.  (Id. 11.)

According to the Government, the ICE case agent also conferred with an Assistant U.S. Attorney and recommended that 23 aliens (7 "cooperators" and 16 "non-cooperators") be criminally charged based upon the prosecution guidelines for the case.  (Id. at 9.)  Each was subsequently indicted for fraudulently executing the I-9 Form.  (Id. at 10.)  The non-cooperators (who were revised down to 14 individuals) also pled guilty pursuant to a plea agreement and were assigned sentencing dates.  Of these, according to the Government, 13 were still present in the United States after Defendants were indicted.  (Id. at 12 n.10.)  The remaining

20 aliens not charged remained in administrative custody pending deportation proceedings "in the normal course." (Id. at 10.)

Therefore, when Defendants were arraigned on December 10, 2008, the 8 cooperating witnesses and 13 of the 14 non-cooperating witnesses were available.[2]  The 20 individuals who were not charged had already been deported.[3]

Defendants' counsel had, at various times, access to 13 of the non-cooperating witnesses and all 8 of the cooperating witnesses.[4]  At the arraignment, the Government provided Defendants' counsel with a list of the 13 non-cooperating witnesses still in the United States, and their scheduled sentencing dates. (Id. at 14.)  In fact, the Government asserts, and Defendants do not dispute,

---

[2] The Government also states that it provided full discovery to Defendants' appointed counsel, including (1) copies of the statements of the 34 aliens who provided statements, (2) copies of all the fraudulent documents recovered, (3) copies of the entire administrative audit report, (4) copies of all the search warrants and supporting affidavits, and (5) a prosecution report and summary prepared by the ICE case agent. (Opp'n at 13-14.)

[3] At the hearing on this matter, counsel for the Government and Defendants agreed that the Government did not notify Defense counsel prior to deporting these un-charged individuals, but did notify Defense counsel as to the 21 remaining witnesses.  Of these remaining witnesses, Defense counsel did receive notice of the 13 or 14 that were in custody and to be deported.

[4] Although in their briefings counsel referred to 8 cooperating witnesses, at the hearing on the matter counsel attested to 7 cooperating witnesses.

that the Government provided Defendants with a list of the 13 individuals and their sentencing dates, thereby facilitating Defendants' access to those witnesses.

Defendants fail to make a plausible showing of bias in the Government's actions recounted above.  The Court notes that out of Defendants' five-page memorandum in support of their motion, Defendants offer only one page in support of their argument for bias, which consists largely of conclusory or irrelevant statements.

Defendants first point to the fact that the Government secured work permits for certain aliens.  (Mot. at 4.)  This is irrelevant, as the fact that the Government offered work permits to some aliens who remained in the United States does not weigh on whether the Government acted in bad faith when deporting other aliens.

Defendants next assert that the 13 aliens in the Honolulu Federal Detention Center "have a disincentive to talk to the Defendants' counsel because they would have to remain in the Detention Center as opposed to their immediate return to Mexico."  (Id. at 4.)  There is no evidence in the record that speaking with Defendants' counsel would prevent the aliens from returning home.  This is pure speculation.  Even if those aliens feel they have a "disincentive" to speak with Defendants' counsel, that is in no part due to any action by the Government.

Counsel had the opportunity, and made an effort, to speak to the individuals, and did in fact speak with two of the individuals.

Defendants offer no evidence that the deportation of the first group was done by the Government with the intention to secure a conviction. Moreover, Defendants offer nothing to this Court to show that the Government's actions departed from normal procedure. See Dring, 930 F.2d at 695. A question of "normal procedure" must take into account the fact that Hawaii simply does not have unlimited holding facilities, and the Government is not equipped to hold uncharged individuals indefinitely.

Defendants' final evidence of bad faith is their own assertion that the "Government had clear and convincing evidence that [the individuals who were not charged] were violating immigration laws and, yet, wholly failed to prosecute." (Mot. at 5.) There is nothing before the Court indicating "clear and convincing evidence" of any kind.

It is a high bar to demonstrate bad faith. Even a negligently or incompetently conducted investigation resulting in deportation of a witness is not sufficient to establish bad faith. See United States v. Armenta, 69 F.3d 304, 307 n.1 (9th Cir. 1995) ("[W]e hold that a negligent failure to ensure a percipient witness' presence does not amount to a finding of bad faith."); United States v.

Velarde-Gavarette, 975 F.2d 672, 674-75 (9th Cir. 1992) (reversing the district court's dismissal of the indictment based on finding of an incompetent investigation but absence of bad faith).

It is not the Government's burden to prove good faith; it is Defendants' burden to prove bad faith. See Dring, 930 F.2d at 693. In this instance, there is not even evidence of bad faith by innuendo.

B. Prejudice

As Defendants do not meet their burden to demonstrate that the Government acted in bad faith, the Court need not discuss whether Defendants were prejudiced by the deportation. However, in an abundance of caution, the Court has assessed whether the deported witnesses could have offered testimony that is material and favorable to the defense and not cumulative, and the Court answers this question in the negative.

Defendants assert, in a single paragraph, that the deported individuals would have been able to testify that Defendants did not participate in illegal activity. (Mot. at 5.) Defendants also state that those deported individuals could have testified as to "how they came into the country, purchased false employment documentation and had not disclosed this information to the Defendants." (Id.)

In their briefing, Defendants aver, without explanation, that the testimony of these individuals would not be cumulative of the remaining witnesses. Defendants offer no explanation as to how the approximately 20 deported individuals would offer testimony that the approximately 21 individuals in the United States could not.

At the hearing on this matter, Defense counsel was quite candid that counsel could only speculate as to what the deported witnesses would say, whether the statements would provide exculpatory evidence, and whether the witnesses would even voluntarily speak to counsel.

Moreover, as the Government correctly points out, Defendants have been charged with <u>specific</u>, <u>individual</u> instances of misconduct relating to 7 different aliens.[5]  (Opp'n at 23-24.)  There is no conspiracy charge or pattern or practice charge brought against Defendants.  As such, Defendants must allege that the evidence the deported witnesses could provide would relate to those specific instances and specific aliens.  Evidence is considered material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the

---

[5] Defendants were indicted for charges related to the following employees only:  Floro Mendez Sanchez; Apolinar Monjaraz-Cruz; Hugo Sanchez Castillo; Cecilio Seba-Polito; Cirilo Gomez Zaragosa; Lorenzo Sanchez Lucas; Juan De Ramona Cantor.  (Doc. # 1 at 20-41.)

13

trier of fact." Dring, 930 F.2d at 695. Even affording Defendants some leeway, Defendants have not demonstrated "the relevance of those events to the crime charged." Valenzuela-Bernal, 458 U.S. at 871.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendants' Joint Motion to Dismiss Based on Violation of Due Process and Compulsory Process.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 19, 2009.



_____
David Alan Ezra
United States District Judge

United States v. Kato et al., CR No. 08-00718 DAE; ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS BASED ON VIOLATION OF DUE PROCESS AND COMPULSORY PROCESS